UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA     CRIMINAL NO.:  3:16-CR-00095(VLB)

Vs.

DANIEL CONRAD     DECEMBER 5, 2016

### DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

The Defendant, Daniel Conrad, through counsel, submits this Memorandum in Aid of Sentencing, which sentencing is scheduled to occur on December 14, 2016 at 3:00 p.m.

Undersigned counsel is aware that the court is familiar with the law of sentencing post Booker and it is clear that the Section 3553(a) factors are paramount to any sentencing determination, and that the parsimony clause is a "overarching" provision instructing the District Court's to "impose a sentence, but not greater than necessary to achieve the goals of sentencing."

Mr. Conrad stands convicted in violation of 18 U.S.C. Section 2251(a), Production of Child Pornography.  Mr. Conrad is facing a 15 year mandatory minimum sentence as a result of his conviction.  He has never before been

1

arrested for any criminal offense,[1] has never spent a day incarcerated, and in many ways is an atypical defendant facing such a draconian sentence.

Including Mr. Conrad's state arrest, charges have been pending against him since August 19, 2014, almost 28 months. He has been on release for both the state and the federal offenses, and has been completely compliant and cooperative with his federal probation officers, has had no issues while on release, and if he were inclined to flee, he had as noted, more than 28 months to think about leaving the District of Connecticut. He has not done so. He has fully accepted his responsibility for his criminal conduct, and is prepared to accept the sentencing that the court will impose.

## SENTENCING ANALYSIS:

The following is an analysis of the Section 3553(a) factors with the parsimony clause as the "overreaching" principle.

## NATURE AND CIRCUMSTANCE OF THE OFFENSE PER SECTION 3553(a)(1):

---

[1] Mr. Conrad was originally arrested on August 19, 2014 by members of the Connecticut State Police on a charge of Sexual Assault in the Second Degree and Risk of Injury to a Minor. State authorities alerted the United States Attorney's Office of a potential charge of production of Child Pornography, and subsequently Mr. Conrad was arrested on a criminal complaint on or about September 1, 2015 by federal authorities. The State case will be dismissed after Mr. Conrad's sentencing in Federal Court.

The offense is discussed below and as set forth in detail in the Presentence Report. Basically, Mr. Conrad used his cell phone to record him having a sexual encounter with a female under the age of 18. Mr. Conrad is now facing at least a 15 year mandatory minimum for that act. Although he did record it on his cell phone, with the girl's consent, he never transferred it, shipped it, or in any way made the tape available to another person or for others to view. It was their tape and their tape alone. Other than he and the victim, no other person had seen this tape until Mr. Conrad voluntarily turned his cell phone over to the police prior to his arrest. The girl was under the age of 18 when this took place. She originally told Mr. Conrad that she was 19. They met on an adult website; it was through their mutual conversing through that website that they found that they lived in close proximity to each other and decided to meet. At all times up to the original meeting, the girl represented her age as 19. Conrad does also not dispute that he was later told by her that she was actually almost 16 years of age.

At the time of the sexual encounter and the videotaping, the girl was under the age of 18. Interestingly, what is a federal crime with a draconian penalty is not illegal under state law. In Connecticut, an identical act would not

have been a crime because the age of consent in Connecticut is 16, as opposed to 18 under the federal law. It is troubling that the identical act has such unimaginable consequences – at least a 15 year mandatory minimum sentence in federal court, and no criminal consequences in state court. Because of the question of age, and the victim's express desire that Mr. Conrad not be prosecuted or punished for the act in which she was a willing participant, were part of the motivating reasons for the State to refer this matter to the Federal Court.

Mr. Conrad does not dispute that he has committed the crime of which he was charged, namely the production of child pornography. He did video tape, on his cell phone, he and the minor victim engaging in sexually explicit conduct and that the depiction was produced using materials that had been mailed, shipped or transported in or affecting interstate or foreign commerce. Whether or not private videotaping on a person's personal IPhone/Cell Phone is what congress had in mind when it imposed these mandatory minimums is certainly questionable. When one thinks of producing child pornography, one could argue that "producers" supply more than abstracting encouragement or requests. They provide the funds, the equipment, the participants, the

distribution network and the like. They control sales, packaging and distribution. They have a commercial investment in the operation. There are, unfortunately, people who do video tape very young children being sexually abused. It is a significant commercial enterprise. It is respectfully argued that it is those people for which a 15 year mandatory minimum is appropriate and should be imposed. It is arguable that any such sentence should be or would be available to people who engaged in the acts which Daniel Conrad pled guilty to. The fallacy of this mandatory minimum term of imprisonment to be imposed in this court one who uses his IPhone/cell phone to video himself and another person under the age of 18, engaged in a sexual relationship, faces the same mandatory minimum penalty as the person videotaping himself or others engaging in sexual act with children. It is understood that the federal age of consent is 18; it is not disputed that Mr. Conrad engaged in the relationship with someone under the age of 18. There is a huge difference, however, between a person approaching 16 years of age engaging in a sexual act as opposed to a young child of 3, 5 or 7 years old, being forced and compelled to be violated. Again, there was no distribution by Mr. Conrad of this video tape. There were no sales, packaging, or any commercial remuneration at all in the taking of this video tape

and yet Mr. Conrad faces the same 15 year mandatory minimum prison sentence that a professional, commercial pornographer faces.

The Defendant also acknowledges and does not dispute that he had contact with two other under aged victims, again meeting them through adult websites. Both of those victims engaged in masturbatory actions and filmed themselves and provided Mr. Conrad with the images. He never personally met or had physical contact with either of these complainants. One of the complainants admitted that she originally told Mr. Conrad that she was 19, and later admitted she was younger than that. It is unknown whether or not the issue of age ever arose in conversations between the second victim. In any event, the Defendant has focused on the original victim and that fact pattern as it is that action that drives the 15 year mandatory minimum prison sentence.

**HISTORY AND CHARACTERISTICS OF THE DEFENDANT PER 33553(a)(2):**

The Presentence Investigation Report, and Dr. Madelon Baranoski's report, present the court with a very detailed image of Daniel Conrad. His personal and family data is set forth in each in great detail. Dr. Baranoski's report attempts to offer an explanation as to Mr. Conrad's conduct. In any event, it is clear from all of the documents and information that, up to his involvement

with victim complainant # 1, Mr. Conrad had suffered no criminal arrests or convictions; he has never spent a day inside of a Detention Facility or prison, he had completed High School and taken college courses, was employed and even attempted to engage in joint commercial ventures with his brother and his step-father. There is nothing in his past or in his history which would explain or prepare anyone for the actions he undertook and which led him to be before this court for sentencing. He was, up until this time, a quiet, unassuming neighborhood young man who would help others and had no actions or activity that would trigger concern or investigation. He may be a stubborn individual, and he may have a non-violent temper, but to most people those were the only negative aspects of Mr. Conrad.

    Mr. Conrad went through a rather traumatic upbringing in that his mother divorced multiple times, the second marriage dissolved very quickly and he was once again deprived of a father figure. Mr. Jeff Fitting then two (2) years later, married Mr. Conrad's mother and he brought stability, guidance, and a good life to the family. He had a very good upbringing and he has a mother, and a stepfather who are very supportive, loving, but grossly disappointed in what has taken place. They are not enablers, nor have they made excuses for him. He has

not made excuses for himself. A great deal of the information contained in Dr. Baranoski's report that came from Daniel was pulled from him by Dr. Baranoski, only after his mother and step father gave information and background. He is not denying or minimizing anything, but simply internalizes everything and really had regressed to a point where his immaturity was obvious to the minor victim whom he was involved with.

In imposing a sentence, it is important that the Court take into consideration that Mr. Conrad suffers from major depressive disorder with anxiety distress, does not meet the criteria for a pedophilia and that he is played with self-doubt, a crippling fear of rejection and a pathological avoidance of guilt. See, Dr. Baranoski Report @ 15-16.

THE KIND OF SENTENCES AVAILABLE PER SECTION 3553(a)(3):

The maximum term of imprisonment under 18 U.S.C. Section 225(1) is 30 years imprisonment, with a 15 year mandatory minimum. Mr. Conrad is also facing a minimum of 5 years up to life of supervised release. In reviewing the congressional fact findings accompanying 18 U.S.C. Section 2251, Congress addressed the effect of the interstate production, transportation, distribution,

receipt, advertising and possession of child pornography on the interstate market in child pornography. It found that:

> "(A). Illegal Production, transportation, distribution, receipt, advertising and Possession of Child Pornography, as defined in Section 2256(8) of Title 18, United States Code, as well as a transfer of custody of children for the production of child pornography, is harmful to the physiological, emotional and mental health of the children depicted in child pornography and has a substantial and detrimental effect on society as a whole."
>
> "(B).  A substantial interstate market in child pornography exists, including not only a multi-million dollar industry, but also a Nationwide Network of individuals openly advertising a desire to exploit children and to traffic in child pornography. Many of these individuals distribute child pornography with the expectation of receiving other child pornography in return."
>
> "(C).  The interstate market in child pornography is carried on to a substantial extent through the mails and other instrumentalities of interstate enforced commerce, such as the internet. The advent of the internet has greatly increased the ease of transporting, distributing, receiving and advertising child pornography in interstate commerce. The advent of digital cameras, and digital video cameras, as well as videotaped cameras has greatly increased the ease of producing child pornography. The advent of expensive computer equipment with the capacity to store large numbers of digital images of child pornography has greatly increased the ease of possessing child pornography . Taken together, these technological advances have led to the unfortunate result and greatly increasing the interstate market in child pornography. See, Pub. L. 109-248, Title V, Section 501, July 27, 2006, 120 Stat 623."

In the above quoted congressional findings, and with additional findings not included in this Memorandum, it would appear that this case, and these facts, call of the imposition of the 15 year mandatory minimum sentence. The

especially egregious factors that Congress considered in setting forth his sentencing range, including the distribution, the advertisement, and interstate transportation and production, are not applicable in this prosecution. Fifteen years is a lifetime. Mr. Conrad is 32.5 years of age. Imposing a 15 year period of incarceration will result in his incarceration through what should be the most productive period of his life. In addition, being incarcerated as a "child pornographer", will result in a very difficult period of incarceration. Sexual offenders, especially those who offend against children, face a horrific period of abuse, ridicule, humiliation and isolation as a result of their offense.

**REQUEST FOR SELF SURRENDER:**

The Defendant has been at liberty since his arrest on state charges in 2014. There have been no issues with him in regard to non-compliance in any way. Even after his guilty plea on May 17, 2016, he has remained at liberty and has been compliant and cooperative with both his pretrial services officer and with the writer of the Presentence Report. It is respectfully requested that Mr. Conrad be allowed to self-surrender to his place of incarceration when notified by either the U.S. Marshals or the Bureau of Prisons. Mr. Conrad will be incarcerated at a no lower than level a low security institution. Counsel has

done an inmate load and security designation form from the Federal Bureau of Prisons (P5100.08) and he has a security point total of 8. In addition, under Public Safety factors one must consider that he is a convicted sex offender and he is sentenced to a length of at 15 years would come into play. If he is allowed to voluntarily surrender, it would make a huge difference in his surrender status. In he is taken into custody immediately upon sentencing; his security point total would jump to 11 and would very well effect his placement within the Bureau of Prisons.

Under the Public Safety Factors, an inmate is prohibited from access to the community which is why he will not be designated to a minimum prison. The difference between, however, a low and medium facility is significant and is very meaningful in that there are three Bureau of Prisons facilities in close proximity to Connecticut that would facilitate his visitation and contact with his family. Allenwood, Danbury, or Devens all are within a day's driving range and can facilitate his contact with his family, while at the same time somewhat lessening the risk, both physical and mental, that he will be facing if he is incarcerated in a medium or high level prison. It is recommended that the Court consider including the following language:

"The Court strongly recommends that the Defendant be assigned to FCI Danbury to facilitate regular family visitation, or, in the alternative FCI Allenwood. If the Bureau finds the Defendant qualifies for SOMP Placement, the Court strongly recommends FMC Devens, again to facilitate visitation."

DR. BARANOSKI'S REPORT:

The Defendant will, in a separate pleading, ask that Dr. Baranoski's report be filed under seal. A copy of the report will, of course, be provided to Probation and to Assistant United States Attorney Neeraj Patel. However, there is a great deal of information in that report both as it relates to Mr. Conrad, his ex-wife, his mother and step-father, which is extremely personal, emotional and should not be released to the public.

CONCLUSION:

A 15 year sentence, along with 5 years of supervised release, is "significant, but not greater than necessary" to satisfy the key purposes of sentencing set forth in 18 USC § 3553 (a). Further, it is respectfully requested that the Defendant be allowed to self-surrender to the facility designated by the Bureau of Prisons.

**THE DEFENDANT: DANIEL CONRAD**

BY: _/s/ David A. Moraghan_
David A. Moraghan, Esq.
Smith, Keefe, Moraghan & Waterfall, LLC.
32 City Hall Avenue, Suite C
Torrington, CT 06790
(860) 482-7651
E-Mail: dam@skmwlaw.com
Federal Bar No.: ct00054

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA     CRIMINAL NO.: 3:16-CR-00095(VLB)

Vs.

DANIEL CONRAD     DECEMBER 5, 2016

### CERTIFICATION OF SERVICE

I hereby certify that on December 5, 2016, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

A courtesy copy was mailed to:

Honorable Vanessa L. Bryant, United States District Court, 450 Main Street, Hartford, CT 06103.

BY: _____
David A. Moraghan, Esq.
Smith, Keefe, Moraghan & Waterfall, LLC.
32 City Hall Avenue, Suite C,
Torrington, CT 06790
(860) 482-7651
E-Mail: dam@skmwlaw.com
Federal Bar No.: ct00054