UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. 3:16-cr-95(VLB) |
| | : | |
| v. | : | |
| | : | |
| DANIEL JESSE CONRAD | : | December 9, 2016 |

## UNITED STATES'S SENTENCING MEMORANDUM

The Government respectfully submits this memorandum in response to the sentencing memorandum of the defendant, Daniel Jesse Conrad.

### I.   Introduction

Over a period of nine months three years, from October 2013 to June 2014, Mr. Conrad sexually exploited three 15-year old girls.  He communicated with all three girls separately through Skype and other internet based video chatting applications.  During these video conversations, he repeatedly persuaded them to engage in sexually explicit conduct, including masturbation, which he recorded and saved onto his computer.  He also repeatedly enticed the girls to take sexually explicit pictures of themselves and send them to him.  In addition, Mr. Conrad met one of the girls in person on several occasions, and repeatedly engaged in sexual intercourse and other sexual acts with her.  During their sexual encounters, he filmed and photographed her, including a video of them engaged in sexual intercourse and a picture of the girl lying completely naked on a bed with her wrists and ankles tied to the four corners of a bed.

In light of his conduct, the Government respectfully requests that the Court impose a non-Guidelines term of imprisonment of at least 180 months, which is the statutory mandatory minimum, followed by a lengthy term of supervised release.

II. **Procedural Background and PSR**

On May 17, 2016, Mr. Conrad waived indictment waived indictment and pleaded guilty to a one-count information charging him with him production of child pornography in violation of 18 U.S.C. § 2251. PSR ¶ 1.

At the plea hearing, U.S. Magistrate Judge Richardson made an oral finding that Mr. Conrad's plea was knowingly and voluntarily made with the effective assistance of counsel and that there was a factual basis for the plea.

Accordingly, the Government respectfully asks this Court to enter an order accepting those findings and the plea.

III. **PSR and Guidelines Calculation**

Mr. Conrad faces a statutory mandatory minimum penalty of 180 months of imprisonment, a maximum penalty of 360 months of imprisonment, a term of supervised release of five years to life, a maximum fine of $250,000, and a $100 mandatory special assessment.[1] PSR ¶¶ 78-86. As part of his plea agreement, Mr. Conrad does not object to the ten additional Special Conditions of Supervised Release specifically outlined in the rider to the plea agreement. See Plea

---

[1] The Government notes that pursuant 18 U.S.C. § 3014, which was enacted on May 29, 2015, the Court is required to assess an additional $5,000 special assessment unless the Court finds the defendant is indigent. However, the Government does not believe the assessment should be applied to Mr. Conrad for two reasons. First, Mr. Conrad produced the videos that form the basis of the production count in 2014 (see PSR ¶ 27), before the law was enacted, and therefore, imposing the assessment would violate the Ex Post Facto Clause. See United States v. Labeille-Soto, 163 F.3d 93, 102 (2d Cir. 1998) (holding that special assessment in the amount of $100 violated ex post facto clause, where the offense was complete prior to the effective date of the increase in the special assessment amount from $50 to $100). Second, as evidenced by Mr. Conrad's financial condition and the fact that he has court-appointed counsel, Mr. Conrad appears to be indigent. See PSR ¶ 77 (concluding that Mr. Conrad does not appear to have the ability to pay a fine).

Agreement at 2, 16-17.  He also agreed to forfeit his interest in a computer and iPhone, which are specified in the plea agreement (collectively, the "Forfeitable Items").[2]  See Plea Agreement at 3; PSR ¶ 3.

The Pre-Sentence Report ("PSR") calculated Mr. Conrad's total offense level under the Sentencing Guidelines as follows.  Because the offense involved the production of child pornography of more than one minor, the Guidelines are applied as if the exploitation for each minor had been contained in a separate count of conviction.  PSR ¶ 20; see U.S.S.G. § 2G2.1(d).  For the first victim, MV#1, the PSR calculated Mr. Conrad's base offense under U.S.S.G. § 2G2.1(a) to be 32 and then applied the following specific offense characteristic adjustments:  (a) two-level increase under U.S.S.G. § 2G2.1(b)(1)(B) because the offense involved a minor who had attained the age of twelve years but not yet attained the age of sixteen years; (b) two-level increase under U.S.S.G. § 2G2.1(b)(2)(A) because the offense involved a sexual act; (c) four-level increase under U.S.S.G. § 2G2.1(b)(4) because the offense involved materials that portray sadistic or masochistic conduct; and (d) two-level increase under U.S.S.G. § 2G2.1(b)(6)(B) because the offense involved the use of a computer.  As a result, the PSR determined that Mr. Conrad's offense level with respect to MV#1 is 42.  PSR ¶¶ 21-29.

For the second and third victims, MV#2, the PSR calculated Mr. Conrad's base offense under U.S.S.G. § 2G2.1(a) to be 32 and then applied the following specific offense characteristic adjustments: (a) two-level increase under U.S.S.G. § 2G2.1(b)(1)(B) because the offense involved a minor who had attained the age of

---

[2]  The Government is separately filing a motion for forfeiture of these items.

twelve years but not yet attained the age of sixteen years; (b) two-level increase under U.S.S.G. § 2G2.1(b)(2)(A) because the offense involved a sexual act or sexual contact; and (c) two-level increase under U.S.S.G. § 2G2.1(b)(6)(B) because the offense involved the use of a computer. As a result, the PSR determined that Mr. Conrad's offense level with respect to MV#2 is 38. PSR ¶¶ 30-37.

For the third victim, MV#3, the PSR determined that the same calculation that was applied for MV#2 should also be applied for MV#3, resulting in an offense level of 38. PSR ¶¶ 38-45.

Pursuant to the grouping rules contained in the Guidelines, the PSR calculated Mr. Conrad's combined offense level under U.S.S.G. § 3D1.4 to be 45. PSR ¶¶ 46-49. Following a reduction of three levels for acceptance of responsibility, the PSR calculated Mr. Conrad's total offense level to be 42.[3] PSR ¶¶ 51-53.

The PSR determined that Mr. Conrad has no criminal history points, which places him in Criminal History Category I. PSR ¶¶ 54-55. As a result, the PSR concluded that Mr. Conrad faces a Guidelines range of 360 months of imprisonment, which is the statutory maximum. PSR ¶ 79. He also faces a term of supervised release of five years to life, a fine of $50,000 to $250,000, and a $100 special assessment. PSR ¶¶ 81, 85-86.

The Government agrees with the Guidelines calculation in the PSR. The Government also has no objections to the PSR.

---

[3] At sentencing, because the defendant has assisted authorities by timely notifying the Government of his intention to plead guilty, the Government intends to make a motion that the Court award the third point for acceptance of responsibility under U.S.S.G. § 3E1.1(b).

4

IV.     **Factual Background**

From October 2013 through June 5, 2014, Mr. Conrad sexually exploited and produced child pornography involving three different 15-year-old females. He met one of the minor females ("Minor Victim #1" or "MV#1"), who lived in Connecticut, in February 2014 through Omegle, an internet video chatting service. After their initial conversation, Conrad and MV#1 began communicating regularly through the Kik text messaging and photo sharing application on their cell phones. On March 1, 2014, the two met in person, and Conrad drove MV#1 to Massachusetts where they engaged in sexual activity. On five or six occasions between March 1 and June 5, 2014, Mr. Conrad picked up the minor and drove her to his residence where they engaged in sexual intercourse. During some of the encounters, Mr. Conrad used his iPhone to take videos and pictures of the minor engaged in sexual activity, including pictures and videos depicting sexual intercourse, pictures of her using sexual devices, and a picture of her lying naked on a bed with her ankles and wrists tied to the four corners of the bed. PSR ¶¶ 6-9.

In addition to engaging in hands-on sexual activity with MV#1, Mr. Conrad engaged in several online video conversations with the minor over Skype and Omegle, which are online video chatting applications. During several of these video conversations, MV#1 engaged in sexually explicit conduct, which Mr. Conrad recorded and saved on his computer. He also repeatedly persuaded and enticed MV#1 to take sexually explicit pictures of herself at her home and send them to him via the Kik application, which is a text messaging and photo sharing application.

5

Mr. Conrad then saved these pictures in a password protected folder on his iPhone. PSR ¶ 10.

Mr. Conrad similarly engaged in online video conversations with two other minors. One of the minors lived in New York ("Minor Victim #2" or "MV#2"), and Mr. Conrad began communicating with her in October 2013. They communicated regularly through Kik, Omegle, and Skype until November 2013, and then again from March 2014 to April 2014. The other minor lived in Nebraska ("Minor Victim #3" or "MV#3"), and Mr. Conrad began communicating with her online in January 2014 and regularly communicated with her for approximately one month through Kik, Omegle, and Skype. PSR ¶¶ 11-12.

Although Mr. Conrad never met MV#2 or MV#3 in person, during several of his Skype webcam conversations with MV#2 and MV#3, Conrad persuaded them to engage in sexually explicit conduct, including masturbation, which Mr. Conrad recorded and saved on his computer. He also repeatedly persuaded and enticed the minors to take sexually explicit pictures of themselves at their homes and send them to him via the Kik text messaging application. Mr. Conrad then saved these pictures on his iPhone. PSR ¶¶ 12-13.

In total, Mr. Conrad had approximately 200 images and 52 videos of the three minors engaged in sexually explicit conduct. PSR ¶¶ 10, 14-15.

Mr. Conrad was arrested on a federal criminal complaint on September 9, 2015. PSR at p.1. On August 31, 2015, Mr. Conrad waived indictment and pleaded guilty to the instant charge of production of child pornography. PSR ¶ 1. Sentencing is currently scheduled for December 14, 2016.

6

**V.     Discussion of Sentencing and 3553(a) Factors**

The Government agrees with the defendant and the Probation Officer that the Guidelines range in this case may be more than necessary to accomplish to goals of sentencing.  See PSR ¶ 94.  Thus, the Government respectfully requests that the Court sentence Mr. Conrad to a just and appropriate non-Guidelines term of imprisonment of at least 180 months, which is the statutory mandatory minimum.

In determining an appropriate sentence, the Court should consider the various 3553(a) factors.  These include not only the facts and circumstances the defendant presents in his sentencing memorandum, but also the seriousness of the offense and its impact on the victims, the need to protect the public, the need to deter Mr. Conrad and others, and the need to promote respect for the law.

In this case, Mr. Conrad's offense was a very serious one.  Mr. Conrad, who was close to 30 years old at the time of the offense conduct, sexually exploited three teenage girls.  Mr. Conrad did not sexually exploit these minors on just one occasion.  Rather, he did so on multiple occasions for over a period of nine months.

Mr. Conrad began communicating with each of these girls separately through internet video chatting services.  From October 2013 to November 2013, he was communicating with a MV#2, who was a 15-year old girl in New York.  During their online video conversations, Mr. Conrad persuaded her to engage in sexually explicit conduct, including masturbation, which Conrad recorded and saved on his computer.  Mr. Conrad also repeatedly enticed her to take sexually explicit pictures

7

of herself at her home and send them to him, which Mr. Conrad then saved on his iPhone.

Then in January 2014, Mr. Conrad began communicating with MV#3, who was another 15-year old girl living in Nebraska. He communicated with her for about a month, and as with MV#2, Mr. Conrad persuaded MV#3 to engage in sexually explicit conduct during their online video conversations, which he recorded and saved on his computer, and he enticed her to take sexually explicit pictures of herself at her home and send them to him, which he saved on his iPhone.

In February 2014, Mr. Conrad began communicating with MV#1, who was a 15-year old girl living he Connecticut. This time, however, Mr. Conrad's conduct escalated to hand-on sexual contact with his victim. In March 2014, Mr. Conrad met the girl in person, and Mr. Conrad drove her to Massachusetts where they engaged in sexual activity. After that incident, he continued to engage in sexual acts with her on five or six other occasions between March 1 and June 5, 2014. Although Mr. Conrad was engaged and living with his fiancé, he would bring MV#1 to his home and have sex with her when his fiancé was not home. This activity continued after Mr. Conrad got married in May 2014. During some of his sexual encounters with MV#1, Mr. Conrad used his iPhone to take videos and pictures, including pictures and videos depicting sexual intercourse, pictures of her using sexual devices, and a picture depicting bondage. He also continued to communicate with her online, during which he enticed her to engage in sexually

8

explicit conduct during their online conversations and had her take sexually explicit pictures of herself and send them to him.

While Mr. Conrad was sexually exploiting MV#1, he also went back to communicating with MV#2 for a brief period from March 2014 to April 2014. As before, he enticed her to engage in sexually explicit conduct during their online conversations and had her take sexually explicit pictures of herself and send them to him.

In total, Mr. Conrad had recorded and/or saved on his computer and iPhone approximately 200 images and 52 videos of the three minors engaged in sexually explicit conduct.

In addition to the length of time he engaged in this conduct—nine months—what makes Mr. Conrad's conduct more alarming is his escalating pattern of conduct. As discussed, his conduct escalated from sexual video conversations over to internet with two minors to actual sexual intercourse with a third minor.

In his sentencing memorandum, Mr. Conrad argues that he was not initially aware of the victims' ages when he first began communicating with them. See Def.'s Sentencing Mem at 3, 6. As Mr. Conrad concedes, however, he later learned that at least two of them were under 18 but continued to engage in his conduct. Id. In fact, by April 15, 2014, Mr. Conrad knew that MV#1 was close to 16 years old, yet he continued to have sex with her, he continued to film and photograph her engaging in sexually explicit conduct, and he continued to ask her to send him sexually explicit pictures of herself, all until June 2014. See PSR ¶ 8. In addition, Mr. Conrad was well aware of the age of MV#2. In one text conversation with MV#2

9

that was recovered from his computer, Mr. Conrad expressly refers to her as "a girl thats [sic] 15 from NY."

Although Mr. Conrad correctly points out that he did not distribute the videos and pictures of his victims and did not profit from his conduct, the Court still needs to consider the impact of his conduct on the victims of his crime. The parents of MV#1 have submitted a victim impact statement which the Government has provided to the Probation Officer to share with the Court. In it, the parents describe the devastating impact Mr. Conrad's actions have had on MV#1:

> Since encountering the defendant, my daughter has suffered grave emotional and psychological injuries from which I fear she will never recover. She remains withdrawn, moody, fearful and distant from her family. Her schoolwork has suffered greatly and her ability to socialize normally with others may have been damaged beyond repair. Despite the love of family, she faces a long and difficult road to restoring her well-being. I am afraid she may never achieve the bright future she imagined because it was stolen from her by the defendant.

The parents also describe the profound impact Mr. Conrad's conduct had on the rest of the family, particularly the trauma that MV#1's mother has been suffering as a result. Indeed, Mr. Conrad's conduct has had such an effect on the family that they left Connecticut and "re-located to another state in an effort to escape the fear, depression, and shock that haunts us every day."

Although no victim impact statements have been received from MV#2 and MV#3, as the Court is well aware from other cases, Mr. Conrad's sexual exploitation will undoubtedly and profoundly impact his victims for years to come, if not for the rest of their lives.

In light of his conduct, the Government submits that Mr. Conrad presents a real danger to the community, particularly minors, and therefore, the Court should

consider the need to protect the public from Mr. Conrad.  There is also a need for general and specific deterrence.  Although Mr. Conrad has no prior criminal record, he engaged in the sexual exploitation of not just one minor on one occasion, but at least three minors on repeated occasions over a nine-month period.  Finally, there is a need for general deterrence and promoting respect for the law so that others are deterred from engaging in similar conduct.

Accordingly, the Government respectfully requests that the court impose a fair and appropriate non-Guidelines term of imprisonment of at least 180 months, followed by a lengthy period of supervised release.  The Government submits that a non-Guidelines sentence is appropriate after taking into account the facts and circumstances presented by Mr. Conrad in his sentencing memorandum as well as the seriousness of the offense and the need to deter Mr. Conrad and others, to protect the public, and to promote respect for the law.

## VI.   Restitution and Fine

The Government is not seeking restitution at this time as none of the victims have presented any claims for restitution.  In addition, it does not appear the Mr. Conrad can afford to pay a fine.  PSR ¶ 77.

**VII.     Self-Surrender Should Not Be Permitted**

Although Mr. Conrad seeks permission to self-surrender, self-surrender is not permitted in this case. Mr. Conrad's post-sentencing release or detention is governed by 18 U.S.C. § 3143(a)(2), which provides in relevant part that a person who has been found guilty of an offense described under § 3142(f)(1)(A) and is awaiting execution of a sentence shall be detained unless (i) the Court finds there is a substantial likelihood that a motion for acquittal or new trial will be granted, or (ii) the Government has recommended no sentence of imprisonment. An offense under § 3142(f)(1)(A) includes any offense that is a "crime of violence." A "crime of violence" includes any felony under Chapter 110 of Title 18. See 18 U.S.C. § 3156(a)(4).

The defendant here has been convicted of production of child pornography, in violation of 18 U.S.C. § 2251, which is a felony under Chapter 110 of Title 18, and therefore a crime of violence. As such, the defendant must be detained after sentencing unless (i) the Court finds there is a substantial likelihood that a motion for acquittal or new trial will be granted, or (ii) the Government has recommended no sentence of imprisonment. See 18 U.S.C. § 3143(a)(2). He cannot meet that burden here. First, he has pleaded guilty, thus there is no likelihood that a motion for acquittal or new trial will be granted. Second, the Government has recommended a term of imprisonment. Indeed, a sentence of imprisonment of at least 15 years is mandatory.

Accordingly, the defendant, by statute, is not permitted to self-surrender and he must be detained after sentencing.

## VIII. Conclusion

For the reasons stated above, the Government respectfully asks the Court to impose a just and appropriate non-Guidelines sentence of imprisonment of at least 180 months, which is the statutory mandatory minimum, followed by a lengthy period of supervised release that includes the additional special conditions of supervised release proposed in the PSR (see PSR ¶ 96), which largely mirror the conditions Mr. Conrad agreed to in the plea agreement, and forfeiture of the Forfeitable Items.

Respectfully submitted,

DEIRDRE M. DALY
UNITED STATES ATTORNEY

/s/ Neeraj N. Patel
NEERAJ N. PATEL
ASSISTANT UNITED STATES ATTORNEY
Federal Bar No. phv04499
157 Church Street, 25th Floor
New Haven, CT  06510
Tel.:   (203) 821-3700
Email: neeraj.patel@usdoj.gov

## CERTIFICATE OF SERVICE

      I hereby certify that on December 9, 2016, a copy of the foregoing Sentencing Memorandum was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

                                              **/s/ Neeraj N. Patel**
                                              **Neeraj N. Patel**
                                              **Assistant United States Attorney**